## No. 12,843.

### GIANNETTI *v.* THE PEOPLE.
(300 Pac. 573)

Decided May 18, 1931. Rehearing denied June 22, 1931.

Mr. ROMILLY FOOTE, Mr. ANGELO F. MOSCO, Mr. JOHN R. ADAMS, for plaintiff in error.

No appearance for the people.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

TONY Giannetti was convicted of operating a still intended for the manufacture of intoxicating liquor.

Giannetti's counsel, who did not represent him at the trial, contend that the conviction was unsupported by the evidence and the law.

Giannetti was charged jointly with Joe Fricabrino and Joe Arrigio. His codefendants pleaded guilty. A separate information was filed against Cruz, who had not been tried at the time of the Giannetti trial.

On October 30, 1930, two federal prohibition officers went to a farm owned by Felix Cruz. Attracted by a strong odor of mash, they went to an old adobe house on the premises and there found a still in operation. Fricabrino was preparing mash in a barrel. Arrigio was pumping up a pressure tank. Giannetti was not there at the time. There were in the building, in addition to the still, a new pressure tank, three fifty-gallon barrels of mash and sixteen fifty-gallon empty barrels, twenty gallons of fresh made whiskey, some alcohol meters, sugar, corn, yeast cartons, and other things used in the manufacture and distribution of whiskey.

There was introduced in evidence a lease by Cruz to Giannetti of three rooms in that old adobe house, one acre of cultivated land and some orchard trees. Both Cruz and Giannetti signed the lease. It was dated May 1, 1930, and ran "for and during and until" October 30 of the same year. It provided that the lessee should not use or permit the premises to be used for any purpose prohibited by the laws of the United States or of Colorado. There was in evidence another paper purporting to be a lease of the same premises. It is dated October 1, 1930. The name of the lessee does not appear in the paper. In the typewritten copy inserted in the record before us the names of Fricabrino and Arrigio had been written in and then erased, leaving only faint traces of the names. No one signed the paper as lessee, and it was found in the possession of Cruz.

Cruz testified that when he discussed the matter of leasing the property, Fricabrino and Arrigio were with Giannetti; that he leased to Giannetti, who thereupon paid the first month's rent; that Giannetti moved in in May or June; that "they" brought "their stuff" there in a truck; that Giannetti drove the truck; that Giannetti

came back occasionally—not very often; that he came in a truck; that three or four days before the officers came, witness saw Giannetti come there with a few empty barrels; that at one time Giannetti had some sugar there in his car; that when witness saw that they had a still there, he called it to the attention of Giannetti, Fricabrino and Arrigio; that "they said that * * * they had paid the rent to me, and they own the place there at the present time, and they could keep on working"; that they did stop, however, for a while. With reference to the second lease, the witness said that he had agreed to lease to Fricabrino and Arrigio after Giannetti's lease was over. He also testified that he saw "them" making whiskey in that house, "beginning some time in July"; that for a while they stopped; that about September 20, he saw that "they were at the still there again, and were working"; that at that time Fricabrino and Arrigio were there and operated the still; that Giannetti paid the first month's rent and Fricabrino and Arrigio paid the rent for the rest of the time; that witness did not tell Sperry Packard, Giannetti's attorney, that Giannetti did not have anything to do with the still; and that he did not remember saying that Giannetti did not have anything to do with the still—that it was taken up and carried on by Fricabrino and Arrigio, and they were the only ones that had anything to do with it. It should be said here that there was no testimony that Cruz made any such statements. On re-direct examination, Cruz, testifying to the bringing back of the still, said that he did not know who brought it back, that he never saw any truck there other than Giannetti's, and that he saw Giannetti's truck there after the still came back. He also testified that Giannetti told him to let Fricabrino and Arrigio rent the place "after his lease was out"; that witness thereupon made out a lease; that although it was dated October 1, it was not to become effective until November 1; that it was never delivered; that Fricabrino and Arrigio were

going to sign it and pay the rent November 1. The officers raided the place October 30.

Giannetti's two codefendants testified that Giannetti had nothing whatever to do with the still; that they alone operated it—indeed, they denied practically everything testified to by Cruz.

Giannetti denied all of Cruz's testimony, so far as it tended to connect Giannetti with the operation of the still. He also testified that he executed the lease in order to have a place on which to put some goats; that he paid only the first month's rent, and did not go back; that he abandoned the idea of putting goats on the place, and that he wanted to have the lease cancelled, but that Cruz would not consent; that at the time of the arrest he was working for Nick Carante; that from May 1 to October his family were in town (Walsenburg) so that his children could go to school; that he was working for a man at Rugby; and that he was in no way connected with Fricabrino and Arrigio in making whiskey. Cruz testified that Giannetti said nothing to him about raising goats there.

Carante testified that in October Giannetti was working near Rugby, milking goats, making cheese and selling it. Rugby, counsel say, is a few miles south of the Cruz farm.

█ Where witnesses flatly contradict each other, as they did in this case, much depends upon their appearance and demeanor upon the witness stand, and their manner of giving their testimony. We have only the printed words before us, whereas the jury and the trial judge had the living witnesses before them, and for that reason they were far better qualified than we are to determine the weight to be given to the testimony of each witness. The jury believed Cruz, and they disbelieved Giannetti, and also disbelieved his two codefendants, who, having been caught in the very act of violating the law, had pleaded guilty. The trial judge, whose duty it was to grant a new trial if his reason and judgment did

not approve the verdict (*Piel v. People,* 52 Colo. 1, 119 Pac. 687), denied the application for a new trial. The evidence was sufficient to, and it did, satisfy the jury beyond any reasonable doubt that the defendant was guilty as charged. Giannetti was defended by an able, experienced lawyer; an able, experienced judge presided at the trial; the instructions fairly and correctly stated the law; and there was no error in the admission or rejection of evidence.

The judgment is affirmed.

MR. CHIEF JUSTICE ADAMS did not participate.